## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**PREFERRED WIRELESS LLC,**

**Plaintiff,**

**v.**

**T-MOBILE USA, INC., *et al.*,**

**Defendants.**

**Case No. 2:22-cv-978**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on two Motions. Defendants T-Mobile USA, Inc. and Sprint Solutions, Inc. filed a "Motion for Judgment Based on ADR Settlement" (ECF No. 17) and asked the Court to confirm the Final Arbitration Award. Plaintiff Preferred Wireless LLC then filed a "Motion to Vacate Arbitration Award." (ECF No. 22.) Both Motions are fully briefed. For the reasons below, the Court **GRANTS** Defendants' Motion (ECF No. 17) and **DENIES** Preferred Wireless's Motion (ECF No. 22).

## BACKGROUND

This case arises out of the merger between T-Mobile and Sprint. Preferred Wireless, a former Sprint retailer, argues that Defendants induced Preferred Wireless into a contract to absorb its operations after the merger by misleading it about the number of its stores that T-Mobile planned to close.

T-Mobile and Sprint were two of the largest mobile device providers in the United States until the companies merged in April 2020. (Compl., ECF No. 5, ¶ 47.) As a Sprint retailer, Preferred Wireless operated over 80 stores in Ohio, Michigan, and Pennsylvania. (*Id.* ¶ 28.) Its operations were absorbed by T-Mobile after the merger, when the parties entered into five Retailer Services Agreements ("RSA"). (*Id.* ¶¶ 92–94, n.1; *see also* RSA, ECF No. 17-3.) T-Mobile

1

acknowledged that because of the merger, it would have more stores than customers, and thus some stores, like those owned and operated by Preferred Wireless, would need to be closed. (*Id.* ¶¶ 45–46, 51, 61–62.) Preferred Wireless alleges that Defendants misrepresented and concealed the number of stores that T-Mobile planned to close, inducing Preferred Wireless to sign the RSA that gave T-Mobile the right to close any Preferred Wireless store for any reason, or no reason at all. (*Id.* ¶¶ 49–91.) After two rounds of store closures, Preferred Wireless sold its business to Connectivity Source and went out of business. (*Id.* ¶¶ 127–37.)

Preferred Wireless initiated this lawsuit in the Delaware County Court of Common Pleas. (*See* Compl., ECF No. 5.) The Complaint alleges claims against Defendants that include fraud and fraudulent inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, violations of the Washington Consumer Protection Act and the Washington Franchise Investment Protection Act,[1] and unjust enrichment. (*Id.*) Defendants removed the case to this Court, and then the parties agreed to proceed with arbitration through Judicial Arbitration and Mediation Services ("JAMS").[2] (ECF Nos. 2, 3.)

The Arbitrator dismissed Preferred Wireless's claim under the Washington Franchise Investment Protection Act. (ECF No. 21-1, PageID 520–33.) In October 2023, the matter proceeded to a five-day hearing on Preferred Wireless's remaining claims. At the end of that hearing, the Arbitrator granted Defendants a directed verdict on Preferred Wireless's Washington Consumer Protection Act Claim. (*Id.* PageID 534–38.)

---

[1] The RSA contained a choice of law provision that the rights and obligations of the parties would be construed in accordance with, and governed by, the laws of the State of Washington. (Compl., ECF No. 5, ¶ 8.) T-Mobile has its corporate headquarters in Washington. (*Id.* ¶ 3.)

[2] The RSA provided that the arbitration "will be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect." (RSA, ECF No. 17-3, PageID 325, Section 16.1.)

Then the Arbitrator issued an Interim Arbitration Award concluding that Preferred Wireless had not satisfied its burden of proof by a preponderance of the evidence on its fraud in the inducement, negligent misrepresentation, or breach of contract claims. (*Id.* PageID 540–78 ("Interim Arbitration Award").) The Arbitrator first found that the releases signed by Preferred Wireless were valid and enforceable, not unconscionable under Washington law. (*Id.* PageID 558–63.) Since Preferred Wireless signed the releases, it released its claims against T-Mobile or assigned those claims to Connectivity Source. (*Id.*)

The Arbitrator also found that Preferred Wireless did not prove fraud or negligent misrepresentation in connection with the store closures by clear and convincing evidence. (*Id.* PageID 564–75.) Preferred Wireless knew that T-Mobile intended to close some stores and understood that T-Mobile had the exclusive right to do so under the RSA. (*Id.* PageID 574.)

Next, the Arbitrator explained that the duty of good faith and fair dealing cannot be invoked to contradict the terms of a contract. (*Id.* PageID 575.) Because Preferred Wireless cannot use this legal theory to contradict T-Mobile's contractual right to close stores, it failed to prove by clear and convincing evidence that Defendants' actions constituted a breach of contract. (*Id.* PageID 576.) Nor did Preferred Wireless prove by a preponderance of the evidence that Defendants acted in bad faith to maintain its breach of the duty of good faith and fair dealing claim. (*Id.*) Although the Interim Arbitration Award found in favor of Defendants, the Arbitrator did not award monetary relief and instead ordered additional briefing on the issue of attorneys' fees and costs. (*Id.* PageID 577–78.)

Defendants submitted a fee petition requesting $3,395,717.90 in attorneys' fees and costs. (ECF No. 21-1, PageID 580–600.) Preferred Wireless opposed that petition and the Arbitrator held a hearing. The particular provision of the RSA at issue stated that:

3

**16.7** **Attorney's Fees and Costs.** For claims in which at least one party seeks monetary relief, if the arbitrator awards such relief, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs (with such cost to include the costs of arbitration such as, without limitation, the arbitrator's fees and expert witness fees). The "prevailing party" is determined as follows:

16.7.1 <u>Defendant (or Counterclaim Defendant) as the Prevailing Party</u>: After appointment of an arbitrator, the defendant may extend to the plaintiff a written offer of settlement for a sum certain, incorporating all claims and counterclaims asserted in the arbitration. If the plaintiff rejects or fails to accept such offer of settlement within fifteen (15) calendar days after receiving the offer, the matter proceeds to arbitration, and the arbitrator awards the plaintiff an amount equal to or less than the settlement amount offered by the defendant, the defendant shall be deemed the prevailing party. The defendant may submit subsequent offers of settlement, each superseding prior offers, provided that the offer is made at least thirty (30) calendar days prior to the arbitration.

16.7.2 <u>Plaintiff or Counter-Plaintiff as the Prevailing Party</u>: After appointment of an arbitrator, the plaintiff may extend to the defendant a written offer of settlement for a sum certain, incorporating all claims and counterclaims asserted in the arbitration. If the defendant rejects or fails to accept such offer of settlement within thirty (30) calendar days after receiving the offer, the matter proceeds to arbitration, and the arbitrator awards the plaintiff/counter-plaintiff an amount equal to or greater than the settlement amount offered, the plaintiff will be deemed the prevailing party. The plaintiff may submit subsequent offer of settlement, each superseding prior offers, provided that such offers are made within thirty (30) days of the arbitration hearing date.

16.7.3 <u>No Prevailing Party</u>. If neither party extends an offer of settlement, or if neither of the situations outlined in Sections 16.7.1 and 16.7.2 above occur, then neither party shall be deemed a "prevailing party" for the purposes of recovering attorneys' fees and cost under this Agreement, and each party will bear its own attorneys' fees and all other expenses incurred by such party in connection with any arbitration or other proceeding under this Agreement.

(RSA, ECF No. 17-3, PageID 326–27.)

Preferred Wireless argued that because the Interim Arbitration Award did not include an award of damages, Defendants were not considered the prevailing party under the RSA. (ECF No. 22, PageID 1047 (summarizing arguments made during arbitration).) Preferred Wireless also

4

argued that Defendants' fee petition did not include sufficiently detailed time entries for the billing attorneys and moved to compel Defendants to submit contemporaneous billing records. (*Id.* PageID 1047–50.) The Arbitrator indicated that he would deny Preferred Wireless's motion to compel. (*See* ECF No. 21-1, PageID 985.)

The Arbitrator issued a Final Arbitration Award in April 2024. (ECF No. 21-1, PageID 507–18 ("Final Arbitration Award"); *see also* ECF No. 17-2.) The Arbitrator explained that Defendants complied with Section 16.7 of the RSA because they made a timely offer to settle the case and Preferred Wireless rejected at that offer. (*Id.* PageID 509–10.) Since Defendants obtained favorable rulings on Preferred Wireless's claims, the Arbitrator found that Defendants were the prevailing party and entitled to an award of attorneys' fees and costs. (*Id.*) The Arbitrator did, however, reduce Defendants' fee request by 15%, and awarded Defendants $2,465,933.30 in attorneys' fees, $283,064.17 in costs, and $210,655.36 in expert fees. (*Id.* PageID 516–17.)

Soon after, Defendants moved to confirm the arbitration award in this Court. (ECF No. 17.) Preferred Wireless filed a memorandum in opposition (ECF No. 21) to Defendants' Motion, and a counter Motion to Vacate the Arbitration Award (ECF No. 22). Defendants filed an opposition to Preferred Wireless's Motion (ECF No. 26), and Preferred Wireless replied in support of its Motion (ECF No. 27.)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that "any party to the arbitration" can apply for an order confirming an arbitration award. 9 U.S.C. § 9. A district court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *Id.* The FAA "expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). The standard when

5

reviewing an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence." *Id.* (internal quotations omitted).

Section 10 of the FAA provides the statutory grounds for a Court to vacate an arbitration award, including where: (1) the award was procured by corruption, fraud, or undue means; (2) an arbitrator evidenced partiality or corruption; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(1)–(4). A court may also vacate an award found to be in manifest disregard of the law. *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008).

An arbitrator acts with manifest disregard of the law if "(1) the applicable legal principle is clearly defined" and "(2) the arbitrator[] refused to heed that legal principle." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995)). But "mere error in interpretation or application of the law is insufficient." *Jaros*, 70 F.3d at 421. "[T]he decision must fly in the face of clearly established legal precedent." *Id.*

## ANALYSIS

Preferred Wireless asks the Court to vacate the Final Arbitration Award of nearly $3 million in attorneys' fees and costs to Defendants. (ECF No. 22.) Preferred Wireless cabins its challenge to attorneys' fees award, not the Arbitrator's dismissal of its claims during the summary adjudication process, or in the Interim Arbitration Award. (*See id.*) Preferred Wireless argues that the Arbitrator exceeded his powers under 9 U.S.C. § 10(a)(4) and that the Final Arbitration Award manifestly disregarded the law. (ECF No. 22.) Defendants disagree and argue the Court must confirm the Final Arbitration Award. (ECF No. 17.) The Court addresses each of Preferred Wireless's arguments in turn.

I.    **The Arbitrator did not exceed his authority by awarding attorneys' fees to Defendants as the prevailing party.**

Preferred Wireless argues that the Final Arbitration Award should be vacated under § 10(a)(4) because the Arbitrator exceeded his powers by departing from the contractual requirements of the RSA. (ECF No. 22, PageID 1053–54.) Preferred Wireless interprets Section 16.7 as including two conditions precedent before the Arbitrator can award attorneys' fees and costs: (1) the party must be the prevailing party and (2) the arbitrator must have awarded that party monetary relief. (*See id.*) Since the Arbitrator only found that Defendants were the prevailing party, but did not award monetary relief, both conditions were not satisfied and the Arbitrator should not have awarded attorneys' fees and costs. (*Id.* PageID 1054.)

Defendants counter that Preferred Wireless incorrectly reads the second condition precedent into the contract, when the RSA only requires the first—a party to be "the prevailing party" to be entitled to attorneys' fees. (ECF No. 26, PageID 1653–55.) To reach Preferred Wireless's understanding of the RSA, Defendants argue that the Court must interpret Section 16.7 as saying a defendant is the prevailing party if "the arbitrator awards plaintiff an amount equal to or less than the settlement amount offered by the defendant *but not zero*," which the language omits. (*Id.* PageID 1654 (emphasis in original).) "[E]ven if the Arbitrator had made an error in interpreting the RSA," "such an error would not satisfy the manifest disregard standard," says Defendants. (*Id.* PageID 1654–55.)

The RSA states that "[f]or claims in which at least one party seeks monetary relief, if the arbitrator awards such relief, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs[.]" (RSA, ECF No. 17-3, PageID 326–27, Section 16.7.) To be the prevailing party, Defendants must have extended an offer to Preferred Wireless "for a sum certain" (*Id.* Section 16.7.1.) If Preferred Wireless "rejects or fails to accept such offer," and the matter

proceeds to arbitration, but the Arbitrator awards Preferred Wireless "an amount equal to or less than the settlement amount offered by [Defendants], [Defendants] shall be deemed the prevailing party." (*Id.*) For Preferred Wireless to be the prevailing party, Defendants must reject an offer of settlement and the Arbitrator must award Preferred Wireless an amount greater than the settlement offer. (*Id.* Section 16.7.2.) If neither party extends an offer of settlement, or if the Arbitrator awards Preferred Wireless more than the settlement amount offered, "then neither party shall be deemed a 'prevailing party' for the purposes of recovering attorneys' fees and costs." (*Id.* Section 16.7.3.)

Here, Defendants made an offer of settlement for $50,000, which Preferred Wireless rejected. (Interim Arbitration Award, ECF No. 21-1, PageID 603.) The case proceeded to arbitration, and the Arbitrator did not award Preferred Wireless any monetary relief. (*Id.* PageID 540–78.) Instead, the Arbitrator found in Defendants' favor on all claims. (*Id.* PageID 577–78.) Since Preferred Wireless rejected the settlement offer, then received an amount less than the settlement offer, based on the plain language of Section 16.7.1, Defendants were the prevailing party. (Final Arbitration Award, ECF No. 21-1, PageID 509–10.)

To require an award of monetary relief to Defendants, as Preferred Wireless suggests, would create an absurd result because Defendants were not seeking monetary relief. They were only defending against a lawsuit. The language of the RSA only requires one party to be seeking monetary relief. Preferred Wireless's arguments to the contrary are inconsistent with the most logical interpretation of the contractual language. (*See* ECF No. 17-5, PageID 416 (Final Arbitration Award in *Wireless Lifestyle, LLC v. T-Mobile USA, Inc., et al.* (JAMS No. 5160000112)).)

The Arbitrator's interpretation of the parties' agreement is entitled to deference and subject to the narrowest form of judicial review. Preferred Wireless has not shown that the Arbitrator disregarded the language of the parties' agreement. Without such a showing, Preferred Wireless

fails to demonstrate that the Arbitrator exceeded his authority when issuing an award of attorneys' fees or acted in manifest disregard of the law. The Court finds no reason to vacate the Final Arbitration Award on these grounds.

## II. The Arbitrator did not act in manifest disregard of the law by relying on the billing records submitted by Defendants' attorneys.

Next, Preferred Wireless argues that the Arbitrator acted in manifest disregard of the law by awarding attorneys' fees and costs without requiring Defendants to produce contemporaneous billing records. (ECF No. 22, PageID 1054–61.) Defendants counter that Washington law does not require the level of detailed submissions that Preferred Wireless claims it does. (ECF No. 26, PageID 1656–61.)

To establish manifest disregard of the law, Preferred Wireless must show that the Arbitrator recognized the applicable law and then chose to ignore it. *Coffee Beanery, Ltd.*, 300 F. App'x at 418 (citation omitted). Under Washington law, calculating a reasonable attorneys' fee requires calculating a lodestar figure. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (1983). The lodestar calculation multiplies the "hours reasonably expended" by the "reasonable hourly rate of compensation." *Id.* In determining the hours reasonably expended, courts must "discount hours spent on unsuccessful claims, duplicated efforts, or otherwise unproductive time." *Id.* Generally an attorney's established hourly rate, based on their position with the law firm, is considered a reasonably rate. *Id.*

The burden is on the party seeking a fee award to prove that their request is reasonable. *Tug Constr. LLC v. Harley Marine Fin. LLC*, No. 2:19-cv-00632-BAT, 2022 U.S. Dist. LEXIS 217111, at *5 (W.D. Wash. Nov. 28, 2022) (citing *Bowers*, 675 P.2d at 203). "An attorney seeking reasonable fees 'must provide reasonable documentation of the work performed.'" *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, No. C22-0296-JCC, 2025 U.S. Dist. LEXIS 57710, at *10

(W.D. Wash. Mar. 27, 2025) (quoting *Bowers*, 675 P.2d at 203). "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work." *Id.* If the Court discounts a fee for hours spent on duplicative or unproductive work, the Court must also discount for entries that are unreasonably block-billed, or so vague as to not allow the Court to assess the reasonableness of the fee requested. *Id.* (collecting cases).

Here, the Arbitrator quoted *Bowers* and accurately described the lodestar method under Washington law, demonstrating that the Arbitrator recognized and understood the applicable law. (Final Arbitration Award, ECF No. 21-1, PageID 512 (describing *Bowers* as "a leading case on computing attorneys' fees").) The question becomes whether the Arbitrator manifestly disregarded the law when awarding attorneys' fees to Defendants. This Court finds that he did not.

Preferred Wireless argues that the timekeeping records were "cookie cutter" block-billing, and did not give Preferred Wireless the opportunity to respond to the request in a meaningful way. (ECF No. 22, PageID 1058–59.) The timekeeping records therefore were not sufficiently detailed to allow the Arbitrator to award attorneys' fees, says Preferred Wireless. (*Id.*)

To support its argument, Preferred Wireless cites several cases from the Sixth, Second, and Tenth Circuit. (*Id.* PageID 1058, 62–63.) While those cases may help this Court assess the reasonableness of an attorneys' fee award, that is not the Court's inquiry in this case. *See C&C Commc'ns, LLC v. T-Mobile USA, Inc.*, No. 86334-7-I, 2025 Wash. App. LEXIS 26, at *18 (Ct. App. Jan. 13, 2025) (explaining that the Court's task is to review whether despite understanding the applicable law, the Arbitrator chose to ignore it). Washington law applies here and the Court's inquiry is narrow—whether the arbitrator applied that law. The Arbitrator correctly applied Washington law.

Preferred Wireless's arguments mirror those raised by C&C Communications, LLC in its motion to vacate a similar arbitration award made to final in a parallel case. *See C&C Commc'ns, LLC*, 2025 Wash. App. LEXIS 26, at *17. There, the Court explained that timekeeping documentation is preferably contemporaneous, and that "any reconstructed timekeeping will be considered when it is reasonable and duly supported by other evidence." *Id.* at *18 (citation omitted). "'Block billing' is the 'group[ing] together [of] multiple tasks without specifying how much time each task took." *Id.* (quoting *Nat'l Lab. Rels. Bd. v. Bannum, Inc.*, 102 F.4th 358, 364 (6th Cir. 2024)). When multiple tasks are grouped into a single entry, it becomes more difficult for a court to evaluate reasonableness and may result in a reduced award. *Id.*

As the Court explained in *C&C Communications*, the Court's task on a motion to vacate or confirm an arbitration award is not to assess the reasonableness of the attorneys' fee award, but to review whether despite understanding the applicable law, the Arbitrator chose to ignore it. *C&C Commc'ns, LLC*, 2025 Wash. App. LEXIS 26, at *18. The record shows that the Arbitrator, who had "watched the case unfold" and was "in the best position to determine which hours should be included in the lodestar," *Chuong Van Pham v. Seattle City Light*, 151 P.3d 976, 982 (2007), "made an 'independent judgment about how much time [was] reasonably spent on [this matter]." *C&C Commc'ns, LLC*, 2025 Wash. App. LEXIS 26, at *18 (citing *Berryman v. Metcalf*, 312 P.3d 745, 757 (2013)).

Here, Defendants faced a "level of uncertainty" because the results of this arbitration "would have had an impact on the several remaining arbitration cases dealing with retailer complaints and T-Mobile." (ECF No. 21-1, PageID 511.) The features of the case and the stakes of the arbitration required a certain level of attention to detail. (*Id.* PageID 513.) The Arbitrator found the declarations from Defendants' counsel credible, and that the time entries did not reflect "any de minimis sums or administrative expenses." (*Id.* PageID 512.)

11

That said, the Arbitrator cautioned that the "matter may have suffered from too many chefs in the kitchen." (*Id.* PageID 514.) He explained, in detail, the number of hours and fees expended by each of the four law firms that represented Defendants throughout the proceedings. (*Id.* PageID 512.) Defendants' exhibits, according to the Arbitrator, suggested that some of the work was duplicative and reflected a "substantial checking of work could have taken place." (*Id.* PageID 514.) Citing *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), the Arbitrator reduced the attorneys' fee amount by 15% to account for duplicative work. (*Id.* PageID 514–16.)[3]

As stated by the Arbitrator, the time entries submitted by Defendants provided enough information about the bases for the award, including the type of work, the hours worked, and the category of attorney who performed the work. (ECF No. 21-1, PageID 514–16.) This information allowed the Arbitrator to exercise his judgment to determine whether the billing records supported the hours expended in the fee petition.

The information included in Defendants' fee petition also distinguishes this case from *224 Westlake, LLC v. Engstrom Properties, LLC*, relied on by Preferred Wireless. *See* 281 P.3d 693, 712 (2012). In that case, the Washington appellate court found plaintiff's documentation of timekeepers insufficiently detailed where plaintiff included only a single-page summary of each attorneys' total hours worked, without detail on the work performed by each attorney, or the dates of performance. *Id.* at 715 (explaining that the insufficient information deprived the defendant of the opportunity to meaningfully critique the fee request in a meaningful way).

---

[3] Preferred Wireless counters that *Moreno* does not apply because that case did not involve deficient billing records. (ECF No. 22, PageID 1060.) Instead, the Ninth Circuit found the district court excessively lowered the attorneys' fee award by 40% without a meaningful explanation. (*Id.*) But the Arbitrator relied on *Moreno* in determining by what percentage to reduce the fee award, not whether the timekeeping records were deficient and warranted a reduction in the first place. (ECF No. 21-1, PageID 514–16.)

Defendants' fee petition included hundreds of pages of "very detailed" records "listing the entire work of attorneys handling this case." (ECF No. 21-1, PageID 513–14.) Even though the petition included records with "unnumbered pages" which "may have supported [Preferred Wireless]'s concerns that some of the work was duplicative," the Arbitrator found that records did not lack sufficient detail to allow Preferred Wireless to meaningfully respond. (*Id.*) Accordingly, *224 Westlake* does not advance the argument that the Arbitrator acted in manifest disregard of the applicable law.

The Arbitrator, who oversaw the case for over two years, "was familiar with the legal resources expended," "the counsel's competence and professionalism, the parties' extensive discovery preparing for the [five-day] hearing, and T-Mobile's use of multiple law firms 'with efficiencies in mind.'" *C&C Commc'ns, LLC*, 2025 Wash. App. LEXIS 26, at *20. Concluding that the billing records did not support the full requested fee amount, the Arbitrator applied the relevant law and reduced the requested fee amount by 15%. Preferred Wireless has not shown that the Arbitrator acted outside of his authority, or in manifest disregard of the law by making this determination.

### III. The Arbitrator did not exceed his authority by declining to hold a hearing on Preferred Wireless's motion to compel.

Last, Preferred Wireless contends that the Final Arbitration Award should be vacated because the Arbitrator exceeded his authority by failing to hold a hearing on Preferred Wireless's motion to compel the underlying timekeeping records. (ECF No. 22, PageID 1061.) Preferred Wireless argues that because the Arbitrator did not rule on the motion to compel before Preferred Wireless's response deadline to Defendants' fee petition, it was deprived of the proper procedure under Rule 17(d) of the JAMS Comprehensive Arbitration Rules and Procedures. (*Id.* PageID 1061–62.)

Rule 17(d) states that "[t]he Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute." (Rule 17(d), JAMS Comprehensive Arbitration Rules & Procedure, https://www.jamsadr.com/rules-comprehensive-arbitration/ (effective June 1, 2021) [https://perma.cc/4TJF-2N9X].)

Defendants argue that Rule 17 applies to the pre-hearing arbitration procedure, not the post-hearing procedure for an award of attorneys' fees. (ECF No. 26, PageID 1661.) The other subsections of Rule 17 address the discovery process before the arbitration hearing.

Rule 17(a) governs "the initial exchange of all relevant, non-privileged documents" and Rule 17(b) outlines the process of taking depositions before the arbitration hearing. Thus, the Court interprets Rule 17 as providing the mechanisms for exchanging information before the arbitration hearing. *See, e.g.*, *Vo v. Tech. Credit Union*, 108 Cal. App. 5th 632, 643, 329 Cal. Rptr. 3d 435, 445 (2025) (applying JAMS Rule 17 and stating that the Rule "controls prehearing exchange of information"). While the Arbitrator could, in his discretion, arrange a conference on a motion to compel *after* the arbitration hearing, Rule 17(d) does not mandate that he do so.

Further, as Defendants point out, JAMS Rule 24(g) gives the Arbitrator discretion to consider the degree to which a party complied with discovery requests when determining the reasonableness of an attorneys' fee award. (*See* Rule 24(g), JAMS Comprehensive Arbitration Rules & Procedure, https://www.jamsadr.com/rules-comprehensive-arbitration/ (effective June 1, 2021) [https://perma.cc/4TJF-2N9X] (directing the Arbitrator to consider "whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceedings or additional costs to the other Parties").) To the extent that the Arbitrator determined that Defendants improperly withheld timekeeping records

14

from Preferred Wireless, the Arbitrator had the opportunity to discount the attorneys' fee award accordingly.

Together, Rules 17(d) and 24(g) suggest that the Arbitrator could have held a hearing on Preferred Wireless's purported dispute regarding the timekeeping records, but the Court cannot say that these Rules required the Arbitrator to do so. Even if the Court found to the contrary—that the Arbitrator erred in his interpretation of the JAMS Rules—"mere error in interpretation or application of the law is insufficient" to warrant a vacatur of the Final Arbitration Award. *Jaros*, 70 F.3d at 421. Therefore, Preferred Wireless has not met its heavy burden of showing that the Arbitrator exceeded his authority or acted in manifest disregard of the law by granting Defendants' request for attorneys' fees and reducing that request by 15%. Since the Court finds no reason to vacate the Final Arbitration Award under 9 U.S.C. § 10(a), the Court must confirm the arbitration award under 9 U.S.C. § 9.

## CONCLUSION

For the above reasons, Plaintiff Preferred Wireless, LLC's Motion to Vacate Arbitration Award (ECF No. 22) is **DENIED** and Defendants T-Mobile USA, Inc. and Sprint Solutions, Inc.'s Motion for Judgment Based on ADR Settlement (ECF No. 17) is **GRANTED**. The Final Arbitration Award is **CONFIRMED** and Defendants are **AWARDED** $2,959,652.83 ($2,465,933.30 in attorneys' fees, $283,064.17 in costs, and $210,655.36 in expert fees) consistent with the Final Arbitration Award.

The Clerk is **DIRECTED** to **ENTER JUDGMENT** for Defendants and to **TERMINATE** this case from the Court's docket.

**IT IS SO ORDERED.**

**5/6/2025**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                        **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**

15